IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM L. BROCK and <br> JANE Y. BROCK, <br>           Plaintiffs, <br>     v. <br> AIR & LIQUID SYSTEMS <br> CORPORATION, et al., <br>           Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 1:19CV314 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs William Brock ("Brock") and his wife, Jane Brock, bring this five-count action for monetary damages against several manufacturers of asbestos-containing products. (ECF No. 1.) Brock was employed as an electrician and maintenance worker at the RJ Reynolds Tobacco Company in Winston-Salem for more than three decades. (*Id.* ¶¶ 54–55.) He alleges that, while there, he was exposed to numerous sources of asbestos, including certain dryer felts manufactured by Defendant Albany International Corporation ("Albany"). (*Id.* ¶¶ 20, 53–54.) The inhalation of asbestos fibers can lead to serious lung diseases; Brock was diagnosed with one such disease—mesothelioma—on November 5, 2018. (*Id.* ¶¶ 12, 52.)

Albany now moves to dismiss the Brocks' claims against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 88.) Because the Court concludes that Plaintiffs have established a prima facie case for specific personal jurisdiction over Albany, the motion will be denied.

**I.      TIMELINESS**

As an initial matter, the Court must consider whether Albany's personal-jurisdiction defense has been timely raised. Plaintiffs initiated this action on March 20, 2019. (ECF No. 1.) Albany was served with the summons and complaint on March 27, 2019. (ECF No. 97-2.) Ordinarily, a defendant seeking dismissal for lack of personal jurisdiction must raise that defense within the twenty-one days allotted for filing responsive pleadings, lest it be waived. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), (h)(1). Based on the time of service, Albany's deadline to file an answer or Rule 12 motion was April 17, 2019. However, it failed to file either until May 3, 2019. (ECF Nos. 88; 92.)

In defense of this delay, Albany insists that Plaintiffs' counsel consented to an extension of time. (ECF No. 105 at 2.) An email exchange appended to Albany's reply brief appears to confirm that the parties stipulated to a May 3, 2019 deadline for filing an answer. (*See* ECF No. 105-1 at 5.) However, unlike several other defendants in this case, (*see, e.g.*, ECF Nos. 10; 26), Albany filed no formal request for an extension with this Court. While parties may stipulate to an extension of the timeframe to respond to a complaint, any such stipulation must be approved by court order to become effective. *See* 4B Federal Practice and Procedure (Wright & Miller) § 1165 ("A stipulation by the parties for an extension of time is ineffective if it is not also embodied in an order of the district court."); 1 Moore's Federal Practice – Civil § 6.06 ("Because the court bears the ultimate responsibility for handling its docket, the court must exercise full control over extensions of time periods."). It was therefore incumbent upon Albany's counsel to seek approval of the extension; yet they did not.

Rule 6 of the Federal Rules of Civil Procedure permits the Court, for good cause, to forgive a party's failure to seek an extension prior to the expiration of a deadline upon a showing of "excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B). Given that Plaintiffs' counsel consented to the extension, the Court is inclined to consider Albany's failure to seek an extension order "excusable" under the circumstances. Moreover, as explained below, Plaintiffs have made out a prima facie case for personal jurisdiction over Albany at this time; postponing resolution of the instant motion so that Albany could submit a separate extension request would neither serve the interests of the parties nor the Court. Accordingly, the Court will (1) construe Albany's briefing and accompanying evidence of the parties' stipulation as a motion for an extension, and (2) grant said motion to permit a retroactive extension of the responsive-pleading timeframe to May 3, 2019. Albany is reminded of its obligation to follow the Federal and Local Rules at all times during this case.

For the reasons outlined, Albany's motion to dismiss and answer are hereby considered timely and its personal-jurisdiction defense therefore has not been waived.

## II.  LEGAL STANDARD

Plaintiffs bear the burden of ultimately establishing personal jurisdiction by a preponderance of the evidence. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Where, as here, the court decides a pretrial personal jurisdiction question without conducting an evidentiary hearing—"reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint"—a plaintiff "need only make a *prima facie* showing of personal jurisdiction" to withstand a jurisdictional challenge. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (citing *Combs*, 886 F.2d at 676). However,

a threshold prima facie finding of jurisdiction does not definitively settle the issue, as the plaintiff "must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (quoting *Prod. Grp. Int'l v. Goldman*, 337 F. Supp. 2d 788, 793 n.2 (E.D. Va. 2004)).

In considering whether a plaintiff has made a prima facie showing of jurisdiction, the court must construe the allegations and available evidence in the light most favorable to the plaintiff. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Allegations in the complaint are taken as true, however, "only if they are not controverted by evidence from the defendant." *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013). If both sides present evidence, "factual conflicts must be resolved in favor of the party asserting jurisdiction for the limited purpose of determining whether a prima facie showing has been made." *Id.*

## III. DISCUSSION

This Court may only exercise personal jurisdiction over Albany if (1) North Carolina's long-arm statute authorizes it, and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See Universal Leather*, 773 F.3d at 558. Because North Carolina's long-arm statute "permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process," this two-prong test "merges into [a] single question," allowing the court to proceed directly to the constitutional analysis. *Id.*

Under the Fourteenth Amendment's Due Process Clause, there are two paths which permit a federal court to exercise personal jurisdiction over a nonresident defendant—general jurisdiction and specific jurisdiction. "General jurisdiction" is present when a defendant's contacts with the forum state are so "constant and pervasive" as to render it essentially at home there. *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citing *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Meanwhile, "specific jurisdiction" may be established "if the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *See Universal Leather*, 773 F.3d at 559 (citing *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012)). Because Plaintiffs only assert that this Court has specific jurisdiction over Albany, the analysis begins and ends there. (*See* ECF No. 97 at 8–17.)

The Fourth Circuit employs a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant is proper: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arose out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather*, 773 F.3d at 559 (quoting *Tire Eng'g*, 682 F.3d at 302). The first step in the inquiry—purposeful availment—is "flexible" and depends on a variety of case-by-case factors.[1] *See id.* at 560. Nevertheless, a

---

[1] In the business context, those factors include, but are not limited to, an evaluation of: (1) "whether the defendant maintains offices or agents in the forum state"; (2) "whether the defendant owns property in the forum state"; (3) "whether the defendant reached into the forum state to solicit or initiate business"; (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state"; (5) "whether the parties contractually agreed that the law of the forum state would govern disputes"; (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship"; (7) "the nature, quality and extent of the parties' communications about the business being transacted"; and (8) "whether the

5

central premise of traditional due process applies in every case: that "a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." *See id.* at 559 (quoting *Tire Eng'g*, 682 F.3d at 301); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).

As it relates to purposeful availment, Plaintiffs have alleged in their complaint that Albany sold and supplied asbestos-containing dryer felts into North Carolina. (ECF No. 1 ¶¶ 2–3, 20.) In support of these allegations, Plaintiffs have produced a collection of invoices which purportedly show that Albany sold felts *directly to* the RJ Reynolds plant in Winston-Salem. (*See* ECF No. 97-1 (representing that thousands of dollars of felts were sold by Albany to the plant during Brock's term of employment)). For its part, Albany offers the sworn affidavit of William Luciano, a longtime Albany employee now serving as a consultant to the company. (*See* ECF No. 90.) According to Luciano, Albany "has no sales records of any dryer felts to RJ Reynold[s] Tobacco Company," and, as a general matter, "did not manufacture or sell any dryer felts for use in the tobacco industry at any time period." (*Id.* ¶ 15.) This factual dispute may find its resolution after discovery begins—both the fact of any sales from Albany to RJ Reynolds and the asbestos content of any felts sold will likely be sorted out through the examination of ordinary business records. At this stage, however, viewing the allegations and preliminary materials in the light most favorable to Plaintiffs, it appears that Plaintiffs have sufficiently alleged that Albany purposefully availed itself of the privilege of conducting business in North Carolina. *See Grayson*, 816 F.3d at 268.

---

performance of contractual duties was to occur within the forum." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted).

The second prong of the specific-jurisdiction test asks whether Plaintiffs' claims arose out of Albany's activities in the state. Here, Plaintiffs have specifically alleged that Brock's mesothelioma and related injuries stem from his exposure to asbestos-containing materials, including Albany's dryer felts, while at work. (*See, e.g.* ECF No. 1 ¶¶ 53 ("[Brock's] mesothelioma was caused by his exposure to asbestos during the course of his employment."); 55 ("[Brock] was exposed to [Albany's] asbestos-containing products while employed at the RJ Reynolds Tobacco Company in Winston-Salem, North Carolina from approximately 1957 to 1988."); 56 ("[Brock] worked with . . . asbestos-containing materials[,] including [those] manufactured and/or sold by [Albany]."). Thus, Plaintiffs have sufficiently alleged that the claims asserted arise out of Albany's contacts with North Carolina.

The final prong—"that the exercise of personal jurisdiction be constitutionally reasonable"—permits a court to consider additional factors related to the appropriateness of the forum. *Consulting Eng'rs*, 561 F.3d at 279. Such factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.* (citing *Burger King*, 471 U.S. at 477). On nearly identical facts, the Western District of North Carolina recently concluded that the exercise of personal jurisdiction over a manufacturer of asbestos-containing products was proper because, after having "sold or distributed its products in North Carolina," the manufacturer "could anticipate being brought into court in North Carolina" if those products injured someone in the state. *See Lineberger v. CBS Corp.*, No. 1:16cv390, 2017 WL 3883712, at *3 (W.D.N.C. Aug. 12, 2017), *report and recommendation*

*adopted,* No. 1:16-cv-00390-MR-DLH, 2017 WL 3879092, at *1 (W.D.N.C. Sept. 5, 2017). The same is true here. As alleged, Albany sold hazardous products directly to the RJ Reynolds plant, and Brock was injured as a result. Adjudication in North Carolina, therefore, comports with "our traditional conception of fair play and substantial justice" and is constitutionally reasonable. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

In sum, the Court concludes that Plaintiffs have satisfied their burden of setting forth a prima facie case for the exercise of specific personal jurisdiction by this Court over Albany. Accordingly, Albany's motion to dismiss must be denied.

## ORDER

IT IS THEREFORE ORDERED that Albany's Motion to Dismiss, (ECF No. 88), is DENIED.

This, the 28th day of February 2020.

/s/ Loretta C. Biggs
United States District Judge