IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM L. BROCK and ) | | |
| JANE Y. BROCK, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | 1:19CV314 | |
| ) | | |
| AIR & LIQUID SYSTEMS ) | | |
| CORPORATION, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs William and Jane Brock initiated this lawsuit against thirty-two Defendants in 2019 seeking compensatory and punitive damages relating to Mr. Brock's diagnosis of mesothelioma. (ECF No. 1.) In their Complaint, Plaintiffs allege that Mr. Brock was exposed to asbestos-containing materials, products, and equipment throughout his thirty-year career at R.J. Reynolds Tobacco Company ("RJR") in Winston-Salem, North Carolina, and that this exposure in the course of his employment has resulted in his diagnosis. (*Id.* ¶¶ 6–7, 51–56.) Before the Court are motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure filed by four of the remaining Defendants: Covil Corporation ("Covil"); Daniel International Corporation ("Daniel"); ViacomCBS Inc., a successor-in-interest to Westinghouse Electric Corporation ("Westinghouse"); and Air & Liquid Systems Corporation, a successor-in-interest to Buffalo Pumps, Inc. ("Buffalo"). (ECF Nos. 179 (Daniel); 194 (Westinghouse); 198 (Buffalo); 202 (Covil).) Additionally, Plaintiffs have filed

cross motions for summary judgment against Defendants Covil and Daniel. (ECF Nos. 173 (Covil); 196 (Daniel).) For the reasons set forth below, the Court grants Defendants' motions and denies Plaintiffs' motions.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "It is axiomatic that in deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). That means that a court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts" even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the

2

nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324. Where, as in this case, the Court has before it cross-motions for summary judgment, the Court reviews each motion separately to determine if either party is entitled to judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

## II. DISCUSSION

To prevail in an asbestos-related product-liability action under North Carolina law,[1] a plaintiff must establish that he was "actually exposed to the alleged offending products." *See Wilder v. Amatex Corp.*, 336 S.E.2d 66, 68 (N.C. 1985). Consistent with that requirement, the Fourth Circuit has further held that a North Carolina asbestos plaintiff "'must prove more than a casual or minimum contact with the product' containing asbestos in order to hold the manufacturer of that product liable." *See Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 & n.2 (4th Cir. 1995) (quoting *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162–63 (4th Cir. 1986), and applying its threshold causation standard to a North Carolina case). Instead, to support a reasonable inference of substantial causation from circumstantial evidence, a

---

[1] As a federal court sitting in diversity, this Court is bound to apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "In tort actions, North Carolina courts adhere to the rule of lex loci and apply the substantive laws of the state in which the injuries were sustained." *Johnson v. Holiday Inn of Am.*, 895 F. Supp. 97, 98 (M.D.N.C. 1995); *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988) ("This Court has consistently adhered to the lex loci rule in tort actions."). Mr. Brock's alleged exposure to the moving Defendants' products occurred in North Carolina, as did the diagnosis of his mesothelioma. Accordingly, the Court will apply North Carolina's substantive law.

3

plaintiff must introduce "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* (quotations omitted). Federal courts have long used this "frequency, regularity, and proximity" test—the "*Lohrmann* test"—to evaluate proximate causation in asbestos cases arising under North Carolina law. *See, e.g., Prekler v. Owens-Corning Fiberglas Corp.*, 60 F.3d 824 (4th Cir. 1995); *Jones v. Owens-Corning Fiberglas Corp. & Amchem Prods., Inc.*, 69 F.3d 712 (4th Cir. 1995).

In *Lohrmann*, the Fourth Circuit held that plaintiffs did not meet their burden when they introduced testimony that the afflicted employee had been exposed to an asbestos-containing product "on ten to fifteen occasions of between one and eight hours during the term of his employment." 782 F.2d at 1163. It also found that evidence showing an employer's purchase of asbestos-containing materials was insufficient when "there was no evidence to show when or where these products were used." *Id.* When a plaintiff is unable to testify as to their actual exposure, they may rely on other witnesses to place them in the "same limited area" as the asbestos for the requisite frequency and regularity. *Roehling v. Nat'l Gympsum Co. Gold Bond Bldg. Prods.*, 786 F.2d 1225, 1227–29 (4th Cir. 1986). Yet "mere proof that the plaintiff and a certain asbestos product are at [a workplace] at the same time, without more, does not prove exposure to that product." *Lohrmann*, 782 F.2d at 1162 (holding that the presence of asbestos at a workplace as large as a shipyard would not obviate a plaintiff's need to demonstrate a more proximate connection).

This notion of "close proximity" was explored in more depth in *Roehling*. There, the Fourth Circuit affirmed summary judgment for the defendants when the plaintiff "could not identify the asbestos products to which he was exposed" and the testimony of three witnesses

4

failed to cure this deficiency when "none of the three ever knew [the plaintiff], or remembered having contact with [him], or could identify [him] as being present on any of the jobs, or knew when, where or what product [plaintiff] had been exposed to." *Roehling*, 786 F.2d at 1226. Such evidence, the court held, "creates only a possibility" that the plaintiff was exposed to asbestos introduced by defendants and "clearly fails to place [plaintiff] in close proximity to identifiable asbestos products." *Id.* at 1226 n.3. On the other hand, the court found that there was a genuine dispute of material fact on another claim in the same case when the plaintiff and his witnesses "were not only in the same plant, but also in the same area, at the construction site of the new boilers, and thus breathed the same air, which was filled with defendants' products' dust." *Id.* at 1228–29.

Plaintiffs point out that the disease at issue in *Lohrmann* was asbestosis and not, as here, mesothelioma. (*E.g.*, ECF No. 174 at 16.) Citing a number of non-binding cases, they argue that the bar to demonstrate asbestos exposure under *Lohrmann* should be meaningfully lower given that mesothelioma, unlike asbestosis, "can develop after only minor exposures to asbestos fibers."[2] (*Id.* at 18 (quoting *Linster v. Allied Signal*, 21 A.3d 220, 228–29 (Pa. Super. Ct. 2011).) Since the filing of the parties' briefs, the Fourth Circuit has addressed this distinction with regards to how it affects jury instructions, stating in dicta that "an evidentiary instruction on asbestosis theoretically requires proof of greater exposure than mesothelioma." *Finch v. Covil Corp.*, 972 F.3d 507, 514 n.2 (4th Cir. 2020). That said—and more pertinent to

---

[2] Plaintiffs have presented expert testimony in this case that "there is no safe level of exposure" to asbestos for a large population. (ECF No. 174-22 at 32.) That said, Plaintiff's expert acknowledges that "there are some exposures to asbestos that are so brief, of such low air concentration, or otherwise of such trivial nature that they cannot reasonably be held on a probability basis to have contributed to a mesothelioma or lung cancer in a specific individual." (*Id.* at 34.) One example of this would be an exposure to "the extremely low amounts of asbestos in ambient air" which "cannot reasonably be considered the cause" of mesothelioma. (*Id.*)

5

the motions currently at issue—the court held that the *Lohrmann* standard nevertheless applied in a mesothelioma case arising under North Carolina law. *Id.* This is in accord with federal courts that have routinely reached the same conclusion. *See, e.g., Haislip v. Owens-Corning Fiberglas Corp.*, 86 F.3d 1150 (table), 1996 WL 273686, at *2 (4th Cir. May 23, 1996) (per curiam); *Finch v. BASF Catalysts LLC*, No. 1:16-CV-1077, 2018 WL 4101828, at *4 (M.D.N.C. Aug. 22, 2018); *Starnes v. A.O. Smith Corp.*, No. 1:12-CV-360-MR-DLH, 2014 WL 4744782, at *3 (W.D.N.C. Sept. 23, 2014); *Jandreau v. Alfa Laval USA, Inc.*, No. 2:09-91859-ER, 2012 WL 2913776, at *1 n.1 (E.D. Pa. May 1, 2012). In other words, even if a mesothelioma action requires less frequent and regular interactions with asbestos-containing materials than would an asbestosis action, this does not eliminate the need to demonstrate that actual exposure occurred frequently, regularly, and in close proximity to the plaintiff.

Here, Plaintiffs generally allege that each of the Defendants "manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials" that were present in the R.J. Reynolds facility over the course of Mr. Brock's employment. (ECF No. 1 ¶ 17.) On the other hand, Defendants largely contend that, even if these allegations are true, Plaintiffs have not produced sufficient evidence that Mr. Brock was actually exposed to the products or materials at issue nor have Plaintiffs demonstrated that any alleged exposure satisfies *Lohrmann*'s "frequency, regularity, and proximity" test. (*See* ECF Nos. 180 at 1; 195 at 3–6; 201 at 1–2; 203 at 1–3.) Because the relevant evidence varies between Defendants, the Court will address each of the summary judgment motions separately.

### A. Covil Corporation

Plaintiffs state that Mr. Brock was employed by RJR from 1957 through 1987 or 1988. (ECF No. 174 at 2.) They contend that, early in his career, Mr. Brock worked "in the main RJR warehouse" and later became a supervisor, where he "had occasion to be everywhere within the plant on any given day." (*Id.* (citing ECF 174-1 at 9).) According to Plaintiffs, Covil supplied insulation to RJR and performed work on it, and Mr. Brock "observed products as they were unloaded, stored, and delivered throughout the plant" and "was around insulators installing, removing, cutting, mixing, and creating high amounts of dust for their work with insulation . . . once a week to once a month." (*Id.* at 1, 2–3 (citing 174-1 at 11–15).) When asked about Covil specifically, however, Mr. Brock acknowledged in his deposition that he did not remember Covil doing any insulation work during his time at RJR. (ECF 174-1 at 20 ("Q: How about Covil? Do you remember a company like Covil coming in and doing – doing some insulation work there? A: No, I don't recall Covil.").)

Nevertheless, Plaintiffs argue that they can satisfy their burden under *Lohrmann* by showing generally that "Covil was a major supplier of insulation to the RJR plant." (ECF 174 at 3.) Their evidence to support this assertion consists of several documents purporting to show that RJR and Covil were in a business relationship with the unstated implication that asbestos-containing materials were ubiquitous throughout Mr. Brock's workplace. These documents include a memo where Covil lists RJR as a client, (ECF No. 174-4), and a single invoice showing the sale of a block of insulation for $356, (ECF No. 174-8). Additionally, Plaintiffs provide a termination notice showing that a Covil employee had worked on a project at RJR. (ECF No. 174-11.) As Defendants point out, however, the termination document

"does not state in which of RJR's several facilities the employee worked, what type of work he was doing, whether it involved asbestos-containing products, or whether the employee worked in any proximity to Mr. Brock."[3]  (ECF No. 203 at 2.)

Finally, Plaintiffs point to a letter dated February 25, 1982, from the Hartford Accident and Indemnity Company to Covil where the subject line reads "Facility Expansion Program/R.J. Reynolds Tobacco Company."  (ECF 174 at 3 (citing ECF No. 174-3).)  This letter states that Hartford had "issued qualifications to bond projects in excess of $3,000,000."  (ECF No. 174-3 at 2.)  Plaintiffs argue that this statement should be read to mean that "Covil had performed projects 'in excess of $3,000,000' with RJR."  (ECF No. 174 at 3.)  Yet, as Covil Defendants point out, "[n]othing in this reference letter states that these prior projects had any connection to RJR."  (ECF No. 203 at 7.)

Such evidence, when viewed in the light most favorable to Plaintiffs, fails to produce sufficient evidence from which a reasonable juror could find that Mr. Brock was actually exposed to asbestos-containing insulation supplied by Covil.  Even if Plaintiffs' assertion is to be credited that a May 1973 fire at Covil's warehouse destroyed other documents that might have demonstrated a greater business relationship, (*see* ECF No. 174 at 4 (citing ECF No. 174-7 at 7–8)), such an inference would still not place Mr. Brock in close proximity to Covil-specific, asbestos-containing insulation as required under *Wilder*.  Moreover, it does not demonstrate that Mr. Brock was exposed to Covil products containing asbestos "on a regular

---

[3] Plaintiffs additionally proffer evidence that a former Covil employee, James Hill, completed insulation-related assignments at RJR plants.  (ECF No. 174 (citing ECF Nos. 174-9; 174-10).)  Yet the record is not clear as to whether he completed this work as an employee of Covil or on behalf of a competitor given that he merely lists RJR as one of his work sites over the course of a career that spanned multiple employers.  (*See* ECF No. 174-10 ¶ 7.)

8

Case 1:19-cv-00314-LCB-JLW Document 271 Filed 02/16/21 Page 8 of 16

basis over some extended period of time in proximity to where [he] actually worked." *Lohrmann*, 782 F.2d at 1162–63. Accordingly, Covil is entitled to judgment as a matter of law on all of Plaintiffs' claims against it.

### B. Daniel International Corporation

Plaintiffs' contentions regarding Daniel fare no better under the *Wilder* and *Lohrmann* analyses. Plaintiffs assert that Daniel workers installed and/or maintained insulation in the RJR facility. They additionally point to Mr. Brock's testimony that he was exposed to asbestos when he entered parts of the RJR plant where workers were "installing, removing, cutting, mixing and creating high amounts of dust from insulation work." (ECF No 197 at 1, 2 (citing ECF No. 197-1 at 15).) However, such an assertion does not place Mr. Brock in the vicinity of any insulation project managed by Daniel nor is there any evidence on the record that links these two separate contentions into an instance of exposure.

Plaintiffs contend, nevertheless, that Mr. Brock has identified Daniel as one of the contractors that completed insulation work at RJR and that this is sufficient to meet its burden. (*Id.* at 3 (citing ECF No. 197-1 at 19).) Yet, as Defendant Daniel points out, such characterization of Mr. Brock's testimony is misleading. (ECF No. 218 at 2–3.) When Mr. Brock was asked directly if he "recall[ed] who was working with the insulation at the RJ Reynolds plant," he answered that he did not "recall exactly who was working" and testified only that Daniel employees were general contractors who "did all kind of different jobs." (ECF No. 197-1 at 19.) Further, when Mr. Brock's attorney asked him if he ever saw Daniel "doing any type of insulation work," Mr. Brock replied that "[a]ll I know, I – they were there. And I can't say because there's so many people doing so much different work. You know, I

9

couldn't." (*Id.* at 20.) Mr. Brock's testimony with regards to Daniel is summarized well in a later exchange:

> Q. [Can you tell me] any particular system Daniel would have been working on?
>
> A. No, not in particular.
>
> Q. Okay. And pretty much what you can tell me is, you believe Daniel at times did work for RJR?
>
> A. Oh, yeah. They were general contractor. I remember that, yeah.
>
> Q. But you can't really be any more specific than that?
>
> A. Yeah.

(ECF No. 197-1 at 74.)

While it is certainly understandable that Mr. Brock would find it challenging to remember details of projects that took place decades ago, it is nevertheless Plaintiffs' burden to demonstrate actual exposure to asbestos-containing products. Plaintiffs' efforts to meet this burden by supplementing it with evidence that Daniel employees worked with insulation at other facilities are likewise insufficient to place Mr. Brock in close proximity to asbestos exposure caused by Defendant. (*See* ECF No. 197 at 3–6, 18 (citing ECF Nos. 197-5 at 41; 197-7 ¶¶ 2–3, 22–23).) The same is true for testimony that Daniel at one time performed insulation work at the RJR facility that does not otherwise place Mr. Brock at the scene. (*See id.* at 4 (citing ECF No. 197-4 at 41).) In sum, the evidence presented—when viewed in the light most favorable to Plaintiff—fails to produce sufficient evidence from which a reasonable juror could find that Mr. Brock was actually exposed to asbestos-containing insulation for which Daniel was responsible. Accordingly, Daniel is entitled to judgment as a matter of law on all of Plaintiffs' claims against it.

## C. ViacomCBS Inc.

Defendant ViacomCBS Inc. is a successor-in-interest to Westinghouse and now moves for summary judgment on Plaintiffs' claims against it. (ECF No. 194 at 1.) Unlike in the cases of Covil and Daniel, however, Plaintiffs are able to provide evidence that Mr. Brock had actual exposure to their product. Mr. Brock identified Westinghouse and GE motors as the most commonly used at RJR during a period of time in which he worked in an office where such motors were repaired. (ECF No. 223-1 at 10.) Though he did not repair these motors himself, he stated that he oversaw the work and was close enough to the electricians that he "had the occasion to breathe in" the dust that such repair work created. (*Id.*) For the two years that Mr. Brock worked in the same building where these repairs took place, he estimated that there were "30 or maybe more" electricians completing such repairs on any given shift. (ECF Nos. 223 at 20; 223-1 at 53.)

This uncontroverted evidence appears to create a genuine issue of material fact at least as to whether Mr. Brock was exposed to Westinghouse motors with frequency, regularity, and proximity. It is not as clear, however, that the types of Westinghouse motors RJR used contained asbestos and that the dust present in the workshop was asbestos dust. Defendant Westinghouse points out that "[n]one of the motors were externally insulated," (ECF No. 195 at 3 (citing ECF No. 195-1 at 29–30)), and that Mr. Brock acknowledged that he "doesn't know really" whether he was actually exposed to asbestos associated with Westinghouse motors, (*id.* at 5 (citing ECF No. 195-1 at 33).)

Plaintiffs entered into evidence a sworn statement Westinghouse completed for a separate lawsuit where it admitted that some of its motors contained "asbestos cloth, asbestos

11

paper, or tape, as well as a form on industrial micarta manufactured with either an asbestos paper or cloth substrate." (ECF No. 223-5 at 63.) Such asbestos-containing products "were typically used in the stator, armature or field frame of a motor," (*id.*), and Mr. Brock repeatedly noted that the electricians in his shop regularly replaced armatures, (ECF No 223-1 at 10, 55, 56). In the same sworn statement Plaintiff relies on, however, Defendant Westinghouse additionally asserts that "a workman would never be 'exposed' to [asbestos] during normal operation and maintenance of the motor." (ECF 223-5 at 63.) According to the statement, "[t]he only time that a theoretical 'exposure' might occur was during rewinding of the motor," (*id.*), a process that Mr. Brock says did not occur in the repair shop nor one that he had ever witnessed, (ECF No. 223-1 at 55).

The Court recognizes that Plaintiffs are able to place Mr. Brock in close proximity to the Westinghouse motors. However, they are unable to provide evidence that the Westinghouse motors at RJR contained asbestos. Further, they fail to contest testimony that asbestos exposure to Westinghouse motors could occur only through a process that RJR electricians did not undertake. Therefore, taking the evidence in the light most favorable to Plaintiffs and resolving all inferences in their favor, the Court finds that they are unable to produce sufficient evidence from which a reasonable juror could find that Mr. Brock was exposed to asbestos dust from Westinghouse motors. Therefore, Defendant Westinghouse is entitled to judgment as a matter of law on all of Plaintiffs' claims against it.

### D. Air & Liquid Systems Corporation

Defendant Air & Liquid Systems Corporation, the successor-in-interest to Buffalo, also moves for summary judgment on all claims against it. (ECF No. 198 at 1.) Plaintiffs contend

12

that Mr. Brock is able to demonstrate his exposure to Buffalo asbestos through his testimony that he remembers these particular pumps being used "through all the power plants and different places." (ECF No. 211 at 2 (citing ECF No. 201-1 at 17).) Plaintiffs additionally assert that Mr. Brock "saw maintenance mechanics working on such pumps" as he traveled throughout the plant in the course of his job duties. (*Id.* at 3 (citing ECF No 201-1 at 47).) Further, they contend—based on depositions from other cases—that the Buffalo pumps must have contained asbestos because the Defendant "did not use non-asbestos packing until sometime between 1981 and 1984, and non-asbestos gaskets until sometime in 1984." (*Id.* at 4 (citing ECF No. 211-5 at 108).)

Even if each of these assertions is true, however, Plaintiffs fail to meet their burden under *Wilder* and *Lohrmann*. For one, none of the evidence places Mr. Brock in close proximity to any Buffalo pump at the time of its repair or when asbestos from its gaskets or packing might otherwise be exposed. Mr. Brock testified that RJR used multiple brands of pumps and, despite testifying that he had witnessed pump maintenance, acknowledged that he could not tell which type of pump the mechanics were repairing at any given time. (ECF No. 201-1 at 17.) With regards to frequency and regularity, Mr. Brock additionally stated that there was no way to tell how many times he had seen mechanics working specifically on a Buffalo pump. (*Id.* at 47–48.)

Additionally, Plaintiffs' claims that Defendant did not use non-asbestos gaskets until the 1980s is dubious based on the record. They cite to a 2002 deposition in which a vice president of Buffalo at the time speaks about documents that describe the elimination of asbestos-containing materials in some of their products. (*See* ECF No. 211 at 4 (citing ECF

No. 211-5 at 108).) Yet far from declaring that all Buffalo pumps contained asbestos during the time period at issue, the deponent clarified that he simply did not know what gaskets were available in the 1950s, 1960s, or 1970s. (ECF No. 211-5 at 102–08 (testifying, for instance, that "I've seen records that discuss gasket material that did not contain asbestos [but] I'm not sure the exact time they were generated").) While such testimony on its own falls short of demonstrating that the Buffalo pumps at RJR were in fact asbestos-free, it nevertheless significantly undercuts Plaintiffs' reliance on this deposition to demonstrate that the opposite is true.

Therefore, even if Plaintiffs are able to show that Buffalo pumps were installed at RJR, they have not placed Mr. Brock in close proximity to any asbestos exposure that might stem from their presence nor have they been able to produce sufficient evidence from which a reasonable juror could find the type of frequency or regularity that *Lohrmann* requires. Accordingly, based upon review of the evidence in the light most favorable to Plaintiffs, Defendant Buffalo is entitled to judgment as a matter of law on all of Plaintiffs' claims against it.

### III.   CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs have failed to meet their burden to provide evidence of Mr. Brock's exposure to asbestos-containing products attributable to Defendants Covil, Daniel, Westinghouse, or Buffalo "on a regular basis over some extended period of time in proximity to where [Mr. Brock] actually worked." *See Jones*, 69 F.3d at 716; *Lohrmann*, 782 F.3d at 1162–63. Therefore, each is entitled to judgment as a matter of law on all of Plaintiffs' claims against them.

The resolution of these motions in Defendants' favor additionally resolves several other outstanding motions in this case. First, it renders moot Defendant ViacomCBS's three motions to exclude expert testimony offered by Plaintiffs now that they will no longer be a party in this case upon dismissal. (*See* ECF Nos. 184; 190; 192.) Second, it additionally renders moot Plaintiffs' *Daubert* Motion to Exclude the Causation Opinions of Defendants' Expert Witnesses. (*See* ECF No. 171.) That motion seeks "to exclude opinion testimony from any expert that chrysotile asbestos does not cause mesothelioma and/or there is a threshold or minimum exposure to chrysotile asbestos required to induce mesothelioma in humans." (*Id.* at 1.) No remaining Defendant in this case has offered expert testimony on any topic. Third, and finally, this Order also renders moot Plaintiffs' Motion for Summary Judgment Regarding Defendants' Affirmative Defenses, (*see* ECF No. 175), given that all Defendants now named in the motion either will no longer remain parties to this case upon dismissal and/or have reached a settlement with Plaintiffs.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that the Motions for Summary Judgment filed by Defendants Covil Corporation, Daniel International Corporation, ViacomCBS Inc., and Air & Liquid Systems Corporation, (ECF Nos. 179; 194; 198; 202) are GRANTED. Plaintiffs' claims against each of the Defendants named herein are hereby DISMISSED.

IT IS FURTHER ORDERED that Motions for Summary Judgment filed by Plaintiffs against Covil Corporation and Daniel International Corporation, (ECF Nos. 173; 196), are DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Regarding Defendants' Affirmative Defenses, (ECF No. 175), is DISMISSED AS MOOT.

IT IS FURTHER ORDERED that Defendant ViacomCBS Inc.'s motions to exclude expert testimony, (ECF Nos. 184; 190; 192), are DISMISSED AS MOOT.

IT IS FURTHER ORDERED that Plaintiffs' *Daubert* Motion to Exclude the Causation Opinions of Defendants' Expert Witnesses, (ECF No. 171), is DISMISSED AS MOOT.

This, the 16th day of February 2021.

/s/ Loretta C. Biggs
United States District Judge